UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────

SAMUEL J. WHITE,

        Plaintiff,

  v.                                        Case No. 22-cv-663-bhl

MARY A. MOORE, et al.,

        Defendants.

─────────────────────────────────────────────

## SCREENING ORDER

─────────────────────────────────────────────

Plaintiff Samuel J. White, who is currently serving a state prison sentence at the Columbia Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. White paid the civil case filing fee in full on June 7, 2022. This matter comes before the Court on White's motion to appoint counsel, motions to attach documents to the complaint, and for screening of the complaint. Dkt. Nos. 1, & 5-7.

### MOTIONS TO ATTACH DOCUMENTS TO THE COMPLAINT

White filed two motions to attach documents to the complaint. Dkt. Nos. 6-7. The motions contain several medical documents labeled "Exhibits 1-5" that relate to the March 1, 2022 incident giving rise to this lawsuit. *Id*. The Court will grant the motion to attach documents to the complaint and will consider the exhibits when screening the complaint. *See Reed v. Vasquez*, 748 F. App'x 62, 64 (7th Cir. 2019) (affirming dismissal of a *pro se* prisoner's complaint because "the documents attached to complaint reflect that he cannot state a claim against the prison officials."); *see also Lindell v. Huibregtse*, 205 F. App'x 446, 449 (7th Cir. 2006) ("Because these documents

were attached as exhibits to his complaint, they are deemed to be a part of the complaint and were properly considered by the district court at the screening stage.").

The Court advises White <u>not</u> to submit more supplements to the complaint because they make it harder for defendants to respond intelligently to his pleading. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 775–76 (7th Cir. 1994) (noting that allowing numerous supplements would make it difficult "for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation.").

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

At the relevant time, White was an inmate at Waupun Correctional Institution. Dkt. No. 1, ¶11. All five Defendants worked at the institution: Mary A. Moore was an Advanced Practice Nurse Practitioner (APNP); Randall Hepp was Warden; Emily Propson was Deputy Warden; Robert Weinman was Nursing Supervisor; and James E. Olson was Security Director. *Id*., ¶¶5-10.

On November 16, 2021, Dr. Laura Sukowaty (not a defendant) ordered White to have a walker and a "low tier, low bunk restriction" due to his history of back problems. Dkt. No. 6-1 at 1-3; Dkt. No. 7-1 at 2. White received the walker shortly thereafter but did not get a cell on the lower tier. Dkt. No. 1, ¶11. White explains, "Moore never entered into my files a lower floor restriction until after I broke [my] back!" Dkt. No. 6 at 1. As a result, for several months, between November 2021 and March 2022, White was forced to use the stairs with his walker to get to his upper tier cell. Dkt. No. 1, ¶11.

On March 1, 2022, while White was walking down the stairs with his walker, his legs buckled and he fell and lost consciousness. *Id*. When he woke up, he could not feel his lower

3

back or move his legs. *Id*. White was immediately taken to the Waupun Memorial Hospital via ambulance, where he spent the next six days. *Id*. White was diagnosed with a minor concussion and a fractured back in three places. *Id*. White completed physical therapy, but he still cannot walk, and he is now confined to a wheelchair. *Id*. White was later moved to the Columbia Correctional Institution so that he could be housed on a lower level that has an elevator. *Id*. For relief, he seeks monetary damages and "a preliminary and permanent injunction ordering [defendants] to stop…forcing inmates to climb stairs with a walker device…" *Id*., ¶¶15-21.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

White asks to proceed with an Eighth Amendment deliberate indifference claim against all defendants. Dkt. No. 1, ¶12. To state an Eighth Amendment deliberate indifference claim, White must allege facts from which the Court can reasonably infer that: (1) defendants knew of an objectively serious risk of harm; and (2) defendants were deliberately indifferent towards that risk of harm by not taking minimally competent steps to deal with it. *Est. of Miller by Chassie v. Marberry*, 847 F.3d 425, 427–28 (7th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994).

White adequately states an Eighth Amendment deliberate indifference claim against Nurse Moore. He alleges that he received a medical restriction for a "low tier, low bunk restriction" in November 2021 because he had a walker for back issues. He asserts that Moore knew about this

4

medical restriction because she was the nurse on the case but failed to enter it timely in his files. And he claims that as a result of this failure, White did not get a lower tier cell, requiring him to access his cell by climbing and descending stairs with his walker. While descending the stairs with his walker on March 1, 2022, he fell and fractured his back in three places. He is now confined to a wheelchair, even after completing physical therapy. Based on these allegations, the Court can reasonably infer that Moore knew about an objectively serious risk of harm and did not take minimally competent steps to deal with it.

Moore has not adequately alleged claims against Hepp, Propson, Weinman, and Olson, however. White's conclusory allegation that "said defendants knew that I had a lower level restriction" is not supported by plausible factual allegations or the exhibits he attached to the compliant. There are not allegations, for example, that White ever notified Hepp, Propson, Weinman, or Olson (either in person or in writing) that he had a lower tier restriction before he fell. *See* Dkt. No 1, ¶11. To the contrary, he has alleged that Moore "never entered into my files a lower floor restriction until after I broke my back," which would undercut the suggestion that the other defendants had notice of his situation. Moreover, the exhibits attached to the complaint show that the lower level restriction was first "referred" to Hepp, Propson, and Weinman on March 8, 2022, *see* Dkt. No. 6-1 at 2, and to Olson on March 18, 2022, *id*. at 3. White claims he did not get a low tier cell "because they did not have an open cell on the lower level," *see* Dkt. No. 1, ¶11, but he does not allege the basis for this claim or allege that any of the named defendants were responsible for this situation. According to the exhibits he submitted, the "hall Sergeant" of the top tier should have been made aware of the restriction, Dkt. No. 6-1 at 3, but none of the defendants served in that role.

5

Finally, the Court will also reject White's claim for injunctive relief because, among other reasons, he is no longer incarcerated at Waupun and he does not allege that there is a realistic possibility he may return there. *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (concluding that injunctive relief was moot because the plaintiff transferred to different facility with no indication of "a realistic possibility that he will again be incarcerated in the same [] facility and therefore be subject to the actions of which he complains."); *see also Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009).

### MOTION TO APPOINT COUNSEL

White also filed a motion to appoint counsel. Dkt. No. 5. He states that he is unable to afford counsel; his incarceration will limit his ability to litigate the case; a lawyer would help to properly apply the law to the facts; and a trial will likely involve conflicting testimony. *Id.*, ¶¶1-4. He also states that he has made efforts to obtain a lawyer. *Id.*, ¶5.

In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). In exercising its discretion, the Court must consider two things: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

6

To satisfy the first prong, the Court must determine that a plaintiff made a good faith effort to hire counsel on his own. *Pickett v. Chicago Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. To demonstrate he satisfied the first prong, White must show he contacted at least three lawyers and provide the Court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses. In particular, the lawyers' responses may have bearing on the Court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. *Pickett*, 930 F.3d at 871. In deciding whether to recruit counsel, the Court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. *Id.* The Court should also consider how well the plaintiff articulated his case to the prospective lawyer. *Id*. Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. *Id.* But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." *Id.*

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." *Eagan*, 987 F.3d at 682. When considering the second prong, the Court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). The Court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to

coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490-491. The Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491. In situations where the plaintiff files his motion in the early stages of the case, the Court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." *Pickett,* 930 F.3d at 871.

For purposes of the current motion, the Court will assume that White has made reasonable attempts to recruit counsel on his own. Dkt. No. 5-1. But it is far too early in the case to tell whether the case is too complex for him to adequately represent himself. The complaint has not yet been served on the remaining defendant, and she has not yet filed a responsive pleading. Until matters proceed, the Court is not in a position to determine whether the difficultly of the case exceeds White's capacity to present it. To date, White has shown sufficient competence in litigating his case. His complaint is clear and coherent. It describes what happened to him and the relief he seeks. He also showed some legal savvy in submitting relevant exhibits to support his complaint. The Court does not have any concerns about his ability to communicate or present relevant information to the Court.

Finally, to the extent White complains that he is incarcerated and unable to afford counsel, these circumstances do not differentiate him from other prisoner plaintiffs. Indeed, he is in the same situation as most, if not all, *pro se* litigants. This is precisely why "deciding whether to recruit counsel is a difficult decision." Further, all trials involve "conflicting testimony," and White need not yet worry about presenting testimony at trial. If this case survives summary

judgment, the Court will reassess the need for counsel for trial. The Court will therefore deny White's motion to appoint counsel without prejudice. Plaintiff may refile this motion at a later time if circumstances change.

## Conclusion

The Court finds that White may proceed with an Eighth Amendment deliberate indifference claim against Moore regarding his March 1, 2022 fall at the Waupun Correctional Institution that fractured his back in three places.

**IT IS THEREFORE ORDERED** that the claims against Randall R. Hepp, Emily E. Propson, Robert W. Weinman, and James E. Olson are **DISMISSED**.

**IT IS FURTHER ORDERED** that White's motions to attach documents to the complaint (Dkt. Nos. 6-7) are **GRANTED**.

**IT IS FURTHER ORDERED** that White's motion to appoint counsel (Dkt. No. 5) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of the complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Mary A. Moore.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Mary A. Moore shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

White is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that White may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin on July 13, 2022.

> s/ *Brett H. Ludwig*
> BRETT H. LUDWIG
> United States District Judge